O
JS6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANNE MADDALENA<br><br>          Plaintiffs,<br>    v.<br><br>DERRICK JOHN TOOLE,<br><br>          Defendant. | Case No. 2:13-cv-4873-ODW(RZx)-**<br><br>Case No. 2:13-cv-6007-ODW(RZx)<br><br>**ORDER GRANTING MOTION TO DISMISS [15], [12]** |
| PEGGY ROBINSON,<br><br>          Plaintiff,<br>    v.<br><br>DERRICK JOHN TOOLE,<br><br>          Defendant. | |

## I.    INTRODUCTION

On September 17, 2013, the Court consolidated the cases of *Peggy Robinson v. Derrick John Toole*, No. 13-cv-06007-ODW(RZx) (C.D. Cal. filed August 15, 2013) and *Marianne Maddalena v. Derrick John Toole*, No. 13-cv-04873-ODW(RZx) (C.D. Cal. filed July 5, 2013).   (ECF No. 21.)   Both Plaintiffs' claims center around Defendant Derrick Toole's carefully-executed cyberstalking, which spanned the course of at least two years.   Toole now moves to dismiss both Plaintiffs' Complaints

as time-barred.  For the following reasons, the Court **GRANTS** Toole's Motion to Dismiss. [1]

## II.    BACKGROUND

From October 2009, through at least January 2011, Toole used spyware programs, GPS devices, and other technology to pry into every last detail of Plaintiffs' lives.  Toole commenced his haunting of Plaintiffs' lives by monitoring his girlfriend Marianne Maddalena's electronic communications.  (Compl. ¶ 9.)  Eventually, Toole expanded his cyberstalking to Maddalena's work life and began electronically monitoring Peggy Robinson, Maddalena's coworker and friend. *Robinson*, ECF No. 1, ¶¶ 9–10.

### A. Plaintiff Maddalena

Maddalena and Toole met in late 2007 and dated on and off for several years. (Compl. ¶ 9.)   On October 6, 2009, Toole—without Maddalena's knowledge—installed the Spectorsoft eBlaster spyware program on her laptop.  (*Id.* ¶¶ 9, 10.) Toole used Spectorsoft to send himself a direct report of Maddalena's every email and instant message.  (*Id.* ¶ 10.)   Toole also sent himself hourly reports of her Internet activity, ultimately gathering over 7,000 reports.  (*Id.* ¶ 12.)

In March 2010, Toole installed Spector Pro spyware on Maddalena's work computer.  (Compl. ¶ 13.)  Then, in April, he installed a GPS tracking device on her car.  (*Id.* ¶ 20.)  Effectively, Toole tracked Maddalena's every keystroke and physical movement.  (*Id.* ¶ 19.)   By late 2010, Toole began to unravel her personal relationships by impersonating her via emails and text messages to her friends and family.  (*Id.* ¶ 21.)  Against the backdrop of Toole's activity, Maddalena was caring for a close family friend afflicted with a terminal illness.  (*Id.* ¶ 22.)

Finally, in January 2011, Maddalena realized that someone had been intercepting her emails when she received a reply to an email that she knew she had

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L. R. 7-15.

not sent.  (*Id.* ¶¶ 6, 22.)   On January 25, 2011, Maddalena hired the computer company Mac SOS to investigate her suspicions.  (Maddalena Decl. ¶ 4.)  Mac SOS discovered Spectorsoft on her laptop.  (*Id.*)   Maddalena confronted Toole who admitted installing the spyware on her laptop.  (*Id.*)  But Maddalena did not yet know about the spyware installed on her other computers or GPS tracking on her car.  (*Id.*)

Maddalena hired legal counsel in February 2011, and reported the incident to the FBI in March 2011.  (Maddalena Decl. ¶ 56.)  On September 19, 2011, the FBI conducted a formal search of Toole's home.   Two days later, the FBI informed Maddalena that Toole had carefully curated a database of her messages, emails, texts, and other private electronic data.  (Compl. ¶ 23.)  This news came as a shock to Maddalena.  (Maddalena Decl. ¶¶ 8, 10.)  Since then, Maddalena has been diagnosed with Post Traumatic Stress Disorder and is regularly attending therapy.  (*Id.* ¶ 8.)

After meeting with the FBI, Maddalena claims that she continued to learn the "type and extent of [Toole's] secretive infiltrations" that are the basis of this action.  (Maddalena Decl. ¶ 8.)  For instance, Maddalena learned that since 2010, her mother and sister had been receiving countless hurtful emails from Maddalena, in which she had accused them of being bad mothers.  (*Id.* ¶ 13.)   Maddalena never sent these emails.  (*Id.* ¶ 11).  In retrospect, Maddalena considers this her first indication of how Toole used spyware to steal her identity and dismantle her personal relationships.  (*Id.*)

Finally, on November 1, 2012, Toole was convicted of a felony for his illegal electronic monitoring.  (Compl. ¶ 8.)  At the restitution hearing on January, 11, 2013, Maddalena "realized the need to bring a civil suit for damages which were not compensated through the criminal proceeding."   (Maddalena Decl. ¶ 15.) Accordingly, on July 5, 2013, Maddalena filed this Complaint, alleging sixteen causes of action.  (ECF No. 1.)

/ / /

/ / /

**B.  Plaintiff Robinson**

Peggy Robinson, Maddalena's co-worker and confidante, also fell victim to Toole's wrongdoings.  *Robinson*, ECF No. 1.  In early 2010, Toole broke into Robinson's work offices and installed spyware on her laptop computer, effectively gaining access to her email, Skype, and G-Chat accounts.  *Id.* ¶¶ 9–10.  As he did with Maddalena, Toole printed and stored the entirety of Robinson's electronic communications at his house.  *Id.* ¶ 15.

According to her Complaint, Robinson "began to discover" in January 2011, that Toole had used spyware and other tracking devices to invade her personal and professional life.  *Robinson*, ECF No. 1.  At this time, "through conversations with each other," Maddalena and Robinson discovered that Toole had read Robinson's G-Chats and emails.  *Id.* ¶ 19.  Robinson then reported the incident to the FBI through her counsel.  *Id.* ¶ 20.  During the September, 2011 search of Toole's home, the FBI found plastic tubs filled with hard copies of Robinson's online communications.  *Id.* ¶ 20.)  Robinson then filed her Complaint on August 15, 2013.  (ECF No. 1.)

Plaintiffs allege various state-law-tort claims and the same three federal claims for damages: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510;  (2) violation of the Stored Communications Act, 18 U.S.C. § 2701; and (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Toole moves to dismiss the federal claims as time barred, contending that Plaintiffs filed their complaints after the prescribed two-year statutes of limitations.  Toole also moves to dismiss the remaining state-law claims for lack of subject-matter jurisdiction.

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under

Rule 12(b)(6).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2).  For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement."  *Id.*  Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice.  *Id.*  Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]."  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief.  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

/ / /

As a general rule, leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

Toole moves to dismiss Plaintiffs' entire action because they filed their complaints after the federal claims' two-year statute of limitations had expired. (Mot. 2; *Robinson*, ECF No. 12.)  Toole further maintains that, because Plaintiffs have failed to state a federal claim, the Court has no basis to exercise supplemental jurisdiction over the remaining state-law claims.  (Mot. 3; *Robinson*, ECF No. 12.) Plaintiffs assert that (1) their federal claims are not time-barred, and (2) even if the federal claims are time-barred, the Court should borrow and apply California Code of Civil Procedure section 340.3, a tolling statute, in this action.  (Opp'n 5; *Robinson*, ECF No. 15.)   Alternatively, they argue that equitable-tolling principles apply. (Opp'n 8; *Robinson*, ECF No. 12.)  Because the Court finds that Plaintiffs' claims are time-barred by the applicable statues of limitations and declines to import California Civil Procedure Code section 340.3, Toole's motion to dismiss is **GRANTED**.

**A.     Plaintiffs' federal claims are time-barred**

The three federal claims at issue in this action have two-year statutes of limitations.  To recover civil damages for a violation of 18 U.S.C. § 2510, a party must file within two years after the date upon which a claimant has a "reasonable opportunity" to discover the violation.  18 U.S.C. § 2520(e)  For 18 U.S.C. § 2701, a civil action runs only for two years after the date upon which the claimant "first discovered or had a reasonable opportunity to discover the violation."  18 U.S.C. § 2707(f).  The applicable statute of limitations for 18 U.S.C. § 1030 explains that an / / /

1    action must be raised "within two years of the date of the act complained of or the

2    date of the discovery of the damage." 18 U.S.C. § 1030(g).

3         Defendant asserts that Plaintiffs' federal claims accrued when Plaintiffs

4    discovered the illegally installed spyware in January 2011, and therefore the two-year

5    statutes of limitations have passed. (Mot. 4; *Robinson*, ECF No. 12.) Plaintiffs

6    contend that although they initially suspected Toole's actions in January 2011, they

7    did not discover every technological mechanism used to spy on them, nor "the extent

8    of Toole's secretive infiltrations," until September 21, 2011, when the FBI explained

9    the findings from their raid of Toole's home. (Opp'n 7; *Robinson*, ECF No. 15.)

10   Therefore, Plaintiffs argue, September 2011, is the proper accrual date. The Court

11   disagrees.

12        Like many statutes of limitation, the statutes at issue in this action do not

13   require that the claimant have actual knowledge of the violation. Rather, 18 U.S.C.

14   § 2520(e), § 2707(f), and 1030(g) demands only that the claimant have had a

15   reasonable notice to discover the violation. One court has explained that the statute of

16   limitations for 18 U.S.C. § 2520(e) will bar a suit if the plaintiff "had such notice as

17   would lead a reasonable person either to sue or to launch an investigation that would

18   likely uncover the requisite facts." *Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429

19   (D.C. Cir. 2002); *accord Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998)

20   ("[plaintiff] had to bring his claim under the Federal Wiretap Act within two years of

21   the time when he had a reasonable opportunity to discover the  violation.") (internal

22   quotations omitted); *Lanier v. Bryant*, 332 F.3d 999, 1003 (6th Cir. 2003).

23        Here, Plaintiffs had a reasonable opportunity to discover the violations long

24   before the FBI investigation in September 2011. Maddalena certainly had a

25   reasonable opportunity to discover Toole's illegal activity on January 25, 2011, when

26   she discovered the Spectorsoft software on her computer. In fact, Maddalena

27   acknowledges in her Complaint that she actually discovered that Toole was

28   responsible for the installation of Spectorsoft when she confronted him. (Compl.

¶ 23.)  Thus, beyond a reasonable opportunity, Maddalena had actual knowledge of Toole's illegal electronic monitoring.  (Maddalena Decl. ¶ 1.)

Similarly, Robinson had sufficient notice of Toole's misconduct by January 2011.  Robinson admits that she "[began] to discover the illegal use of . . . spyware on her computers" in early January, 2011.  (*Robinson*, ECF No. 1, ¶¶ 8, 29.)  Robinson asserts that "Through conversations with each other Ms. Maddalena and [Robinson] came to discover that Defendant was privy to information that could not possibly be obtained by normal means."  (*Id.* ¶ 19)  Thus, Robinson also had actual knowledge of Toole's illegal electronic monitoring in January 2011.

Plaintiffs' argument that the "secretive technological nature" of Toole's wrongdoing prevented them from fully discovering the arsenal of spyware he installed and the extent to which he was monitoring their activities is irrelevant.  A victim of wiretapping does not need to discover every type and means of the defendant's misconduct.  *See Sparshott*, 311 F.3d at 430 (rejecting plaintiff's argument that defendant's use of technologically different means of wiretapping did not put her on notice of his wrongdoing and explaining that the earlier incidents gave her a "reasonable opportunity to discover later violations").  Further, a plaintiff need not even know the exact perpetrator of an injury to have sufficient notice to bring suit.  *See Dyniewicz v. United States*, 742 F.2d 484, 486–87 (9th Cir. 1984.)  Here, it is sufficient that Plaintiffs were aware of the immediate injury giving rise to their federal claims—the secretly-installed spyware.  And although it took a "full-throttle" FBI investigation to uncover the full extent of Toole's actions, the January 2011 discovery of Spectorsoft was enough notice for Plaintiffs to bring suit.

Moreover, taking legal action or launching an investigation indicates that a plaintiff has been made reasonably aware of the defendant's misconduct.  *Sparshott*, 311 F.3d at 429.  Plaintiffs fit squarely within this rule.  In February 2011, after the spyware discovery, Maddalena "hired legal counsel to advise her and they reported this incident to the FBI."  (Compl. ¶ 23; *Robinson*, ECF No. 1, ¶ 20.)  Although

1    Maddalena did not bring a civil suit at that time, by March 2011 she had spoken with

2    two different attorneys and participated in the FBI investigation.   (Compl. ¶ 23.)

3    Both of these actions make clear that by January 2011, Plaintiffs had sufficient notice

4    of Toole's cyberstalking to "sue or to launch an investigation that would likely

5    uncover the requisite facts*." Sparshott*, 311 F.3d at 429.  At the very latest, Plaintiffs

6    were on notice by February or March of 2011, when they had enough information

7    regarding Toole's cyberstalking to enlist help from legal counsel and the FBI.  Even if

8    the Court accepted the later date of March 2011, as the accrual date the two-year

9    statutes of limitation would have run almost five months before Plaintiffs' filing dates.

10   Based on the timeline offered by Plaintiffs in the Complaint, the Court is

11   compelled to believe that January 2011, is the proper accrual date under the applicable

12   statutes of limitation.  Because Plaintiffs waited almost two-and-a-half years to file

13   their complaints, their actions are time-barred.

14   **B.    The statutes of limitations are not tolled based on Toole's state felony**

15   **conviction.**

16   In the absence of an analogous federal tolling statute, Plaintiffs urge the Court

17   to import CCP section 340.3 to toll the federal claims in this action.   CCP section

18   340.3(a) provides,

19   Unless a longer period is prescribed for a specific action, in any action

20   for damages against a defendant based upon the defendant's commission

21   of a felony offense for which the defendant has been convicted, the time

22   for commencement of the action shall be within one year after judgment

23   is pronounced.

24   Cal. Civ. Proc. Code § 440.3(a).

25   Plaintiffs argue that federal courts frequently import state statutes like CCP

26   340.3(a) to toll the statute of limitations for federal claims.  They argue that "[j]ust as

27   in cases brought under 42 U.S.C. § 1983 . . . here there is no federal statute equivalent

28   to CCP section 340.3 which would operate to toll." (Opp'n 5.)  However, a state

statute of limitations should only be applied in the absence of a relevant federal statute of limitations. *See Sierra Club v. Chevron, U.S.A.*, 834 F.2d 1517, 1521 (9th. Cir. 1987). Here, three relevant federal statutes of limitation were already available for Plaintiffs' federal claims.

Although Plaintiffs correctly assert that § 1983 claims merit an application of a state tolling statute because they lack an "independent statute of limitations," *Ellis v. City of San Diego*, 176 F.3d 1183, 1188 (9th Cir. 1999), the Court will not disturb the statute of limitations already provided by the wiretapping statutes. *Burnett v. N.Y. Cent. Co.*, 380 U.S. 424, 433 (1965) (declining to depart from a federal claim's readily available statute of limitations and toll with a local statute).

While the CCP 340.3's statute of limitations was enacted to encourage crime victims to later seek restitution in a civil lawsuit, state legislatures do not devise their limitations periods with national interests in mind. *Guardian N. Bay, Inc. v. Super. Ct.*, 94 Cal. App. 4th 963, 973 (Ct. App. 2001). Federal courts should therefore ensure that borrowing a state statute will not frustrate national policies. *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 367 (1977). Here, 28 U.S.C. § 1658 expressly provides that civil actions like Plaintiffs' federal claims should be raised no later than two years after the date of discovery. 28 U.S.C. § 1658. The only fact that Plaintiffs allege bring this action within the purview of CCP section 340.3 is Toole's felony conviction. Borrowing CCP section 340.3 would arbitrarily and unnecessarily depart from the policies and interests safeguarded by § 1658.

While Plaintiffs maintain that "it is established" that CCP 340.3 tolls federal claims, they do not provide a single authority in which 18 U.S.C. §§ 2510, 2701, or 1030 have been tolled by a felony conviction, much less CCP section 340.3. Plaintiffs cite *Risk v. Kingdom of Norway* for the proposition that CCP section 340.3 can operate as a tolling statute for federal claims. (Opp'n 3.) But Plaintiffs read *Risk* too broadly. *Risk* was a diversity action that applied CCP section 340.3 to state-law claims. *Risk v. Kingdom of Norway*, 707 F. Supp. 1159, 1169 (N.D. Cal. 1989).

1    Unlike *Risk*, the issue here is whether CCP section 340.3 can toll federal claims.

2    Moreover, in *Risk* the parties stipulated in advance that CCP section 340.3 would

3    govern. *Risk*, 707 F. Supp at 1169.

4         The two additional cases that Plaintiffs cite are similarly distinguishable.

5    Although Plaintiffs correctly state that the court in *Loran v. Lockyer* applied CCP

6    section 340.3, the Court did so to affirm the plaintiff's federal claim as time-barred,

7    not to toll the § 1983 claims. *See Loran v. Lockyer*, 43 F. App'x 74 (9th Cir. 2002).

8    And *Ashlee R.*, an unpublished case, is distinguishable because the court did not toll

9    plaintiff's § 1983 claims with CCP section 340.3, but instead tolled under CCP section

10   352(b) until the plaintiff turned eighteen. *Ashlee R. ex rel. Russell v. Oakland Unified*

11   *Sch. Dist. Fin. Corp.*, No. CV 03-5802-MEJ, 2004 WL 1878214, at *3 (N.D. Cal.

12   Aug. 23, 2004).

13   **C.    Even as a last resort, equitable tolling principles are unavailing.**

14        Finally, Plaintiffs argue in the alternative that their federal claims should be

15   equitably tolled out of fairness. (Opp'n 8.)  Maddalena argues that she was (1) seeing

16   a professional therapist; (2) caring for a friend with a terminal illness; and

17   (3) diagnosed with PTSD and accordingly, could not be expected to bring civil suit

18   during this time.  (Opp'n 8–9).  Robinson asserts that she "has become severely

19   mentally affected by Defendant's conduct including becoming paranoid, distrustful,

20   anxious, fearful, emotionally distressed, and requiring substantial therapy."

21   (Opp'n 9.)

22        Equitable tolling will only apply if "extraordinary circumstances" beyond the

23   plaintiff's control made it impossible to file the claims on time.  *Seattle Audubon Soc.*

24   *v. Robertson*, 931 F.3d 590, 595 (9th Cir. 1991).  Further, the party invoking equitable

25   tolling "despite all due diligence, [must be] unable to obtain vital information bearing

26   on the existence of the claim."  *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th

27   Cir. 2001).

28   / / /

While the Court is sympathetic to the traumatic events Plaintiffs endured, the Court does not find that her emotional stress was a sufficient "extraordinary circumstance" that it prevented Plaintiffs from timely filing their civil action. *See, e.g.*, *Stoll v. Runyon*, 165 F.3d 1238, 1239, 1243 (9th Cir. 1999) (applying equitable tolling where plaintiff was psychiatrically disabled after multiple suicide attempts and could not lucidly communicate with her attorney in her harassment action after being repeatedly raped by her work supervisor and sexually harassed by numerous male coworkers).

Additionally, Plaintiffs have not demonstrated that they were unable, because of her emotional stress, to obtain the information necessary to file this action. In fact, Plaintiffs had sufficient information, gleaned from Maddalena's personal investigation and legal counsel, the Plaintiffs' conversations, the FBI investigation, and the criminal proceeding to bring suit long before the statute of limitations expired. Notably, Plaintiffs still waited six months after the January 2013 criminal restitution hearing—which they assert is when they finally "realized the need to bring a civil suit" for damages—to file their claims. Plaintiffs were simply not diligent in filing this action. Thus, the Court finds that this is not an extraordinary circumstance warranting equitable tolling.

In sum, Plaintiffs federal claims are time-barred by the applicable statues of limitations. The Court declines to import CCP section 340.3 to toll the statute of limitations and finds that this case is not sufficiently exceptional to warrant equitable tolling. Without a viable federal claim, the Court declines to exercise jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012). The Court notes that Plaintiffs may be able to refile their state-law claims in state court by November 1, 2013. *See* Cal. Civ. Proc. Code § 340.3(a).

/ / /

/ / /

# V.   CONCLUSION

Accordingly, for the reasons discussed above, Toole's Motion to Dismiss is **GRANTED** and Plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE**.   Plaintiffs' state-law claims are hereby **DISMISSED WITHOUT PREJUDICE**.   The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

October 1, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**